## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUDY LYNN LEESE and DOUGLAS GLENN LEESE, SR., | : : : | No. 1:10-CV-0813 |
| Plaintiffs, | : : | Hon. John E. Jones III |
| v. | : : | |
| ADELPHOI VILLAGE, INC., GARY SOLTYS, WALLY PERKINS, and LISA MATKO, | : : : : | |
| Defendants. | : : | |

## <u>MEMORANDUM</u>

### June 6, 2012

## THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge J. Andrew Smyser (Doc. 48), filed March 26, 2012, which recommends that we grant the collective Defendants' Motion for Summary Judgment (Doc. 34) in its entirety. Plaintiffs Judy Lynn Leese and Douglas Glenn Leese, Sr., filed Objections and a Brief in Support of Objections (Docs. 51, 54) on April 12 and April 30, 2012, respectively. The collective Defendants filed a Brief in Opposition to Plaintiffs' Objections (Doc. 56) on May 9, 2012. For the reasons fully detailed herein, we shall adopt in full Magistrate Judge Smyser's Report and Recommendation and grant summary judgment in favor of the Defendants.

## I.   STANDARDS OF REVIEW

### A.   Review of Magistrate Judge's Report and Recommendation

When objections are filed to the report of a magistrate judge, the district court makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objections are made.  28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980).  The court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations.  *Id.*  Although the standard of review is *de novo*, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations.  *Raddatz*, 447 U.S. at 674-75; *see also Mathews v. Weber*, 423 U.S. 261, 275 (1976); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984).

### B.   Summary Judgment

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the

non-moving party will bear the burden of proof at trial.  *Id.* at 325.  Once the

moving party meets its burden, the burden then shifts to the non-moving party to

show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e)(2).   An issue is

"genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find

for the non-moving party, and a factual dispute is "material" only if it might affect

the outcome of the action under the governing law.  *Anderson v. Liberty Lobby,*

*Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely

on allegations of denials in its own pleadings; rather, its response must ... set out

specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  The

non-moving party "cannot rely on unsupported allegations, but must go beyond

pleadings and provide some evidence that would show that there exists a genuine

issue for trial."  *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).

Arguments made in briefs "are not evidence and cannot by themselves create a

factual dispute sufficient to defeat a summary judgment motion."  *Jersey Cent.*

*Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

However, the facts and all reasonable inferences drawn therefrom must be viewed

in the light most favorable to the non- moving party.  *P.N. v. Clementon Bd. of*

*Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982).  Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment."  *Anderson*, 477 U.S. at 247-48.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Factual Background

The following summary relates the material facts not genuinely in dispute. In accordance with the standard of review applicable to a motion for summary judgment, these facts are derived from the record with all reasonable inferences drawn in favor of the non-moving party.

Plaintiff Judy Leese ("Plaintiff")[1] began working for Defendant Adelphoi ("Adelphoi") in October of 2000 as a Multisystemic Therapist ("MST Therapist") working with troubled youths. Throughout her tenure, she advanced to a supervisory position. Beginning with her 2006-2007 annual performance review,

---

[1] Unless clearly stated otherwise, where this opinion references "Plaintiff," we refer only to Plaintiff Judy Leese.

and continuing into the spring of 2008, Plaintiff had numerous job performance deficiencies in the view of her supervisors, Defendants Gary Soltys ("Soltys"), Wally Perkins ("Perkins"), and Lisa Matko ("Matko"). As a result of these deficiencies, Defendant Matko created, and worked closely with Plaintiff in implementing, a performance action plan to improve Plaintiff's work performance.

In late 2007, Defendant Matko noted inconsistent improvement in Plaintiff's job performance but believed that, overall, Plaintiff was still performing at an unsatisfactory level. As a result, on December 11, 2007, Defendant Matko issued a written reprimand to the Plaintiff. In April of 2008, a routine follow-up with a client's parents revealed that the Plaintiff had violated company policy with respect to two clients in the summer of 2007. An investigation of these cases ultimately led to the Defendants' decision to terminate Plaintiff's employment.

On April 16, 2008, Defendants scheduled a meeting with Plaintiff for April 18, 2008, at which they intended to explain their investigation of her misconduct and terminate her employment. On April 17, 2008, Plaintiff emailed Defendant Matko, stating that she had seen a doctor that day who placed her on total disability due to her back pain. Plaintiff advised that she would be unable to attend the scheduled meeting. Defendants received medical documentation from Plaintiff's doctor, placing her on disability until May 1, 2008, and expecting her to return to

5

work, scheduled a meeting for that date, at which Defendants intended to terminate Plaintiff.

When the appointed May 1, 2008 date arrived, Plaintiff asserted that she needed continuing medical leave but was unable to produce medical documentation supporting that assertion. Notwithstanding this, the Defendants insisted that Plaintiff attend the scheduled meeting. According to Plaintiff, when she spoke with Defendant Perkins and "begged" not to come in to the office for the May 1 meeting, Defendant Perkins responded "I don't give a damn" and informed her that she must come to the meeting. Plaintiff did attend the meeting and was told that her employment was being terminated for her deficient job performance and violation of company policy in handling particular cases under her responsibility the preceding summer.

### B.      Procedural History

On April 16, 2010, the Plaintiffs initiated the above-captioned Family Medical Leave Act ("FMLA") action against Defendants Adelphoi Village, Inc. ("Adelphoi"), Gary Soltys ("Soltys"), Wally Perkins ("Perkins"), and Lisa Matko ("Matko"). (Doc. 1). In Counts I, II, and III, Plaintiff Judy Leese asserts FMLA violations and a claim for intentional infliction of emotional distress, and in Count IV, Plaintiff Douglas Leese asserts a count for loss of consortium. On June 15,

6

2010, the Defendants filed a collective Answer, denying that their actions in terminating Plaintiff violated the FMLA. (Doc. 9).

Following attempts at mediation and a period of discovery, the Defendants filed the instant Motion for Summary Judgment on December 30, 2011. (Doc. 34). This Court referred the Motion to Magistrate Judge J. Andrew Smyser for a report and recommendation on January 5, 2012. (Doc. 38). The Motion having been fully briefed (Docs. 36, 43, 46), Magistrate Judge Smyser issued a Report and Recommendation ("R&R") on March 26, 2012. (Doc. 48).

### C.      Report and Recommendation

In his R&R, Magistrate Judge Smyser undertook extensive review of the arguments raised by the parties and concluded that the Defendants are entitled to summary judgment on all of the Plaintiffs' claims. First, regarding Plaintiff's FMLA claims for leave interference and retaliation, Judge Smyser addressed Plaintiff's contention that even though she was not an "eligible employee" within the FMLA's definition of that term, the Defendants are equitably estopped from relying on eligibility as a defense. Judge Smyser found that Plaintiff did not rely to her detriment on the Defendants' representations of eligibility and thus equitable estoppel is inapplicable.

Next, assuming *arguendo* that Plaintiff had overcome this barrier, Magistrate Judge Smyser went on to find that Plaintiff has failed to meet her evidentiary burden with respect to both her interference and retaliation claims, noting that the Defendants have offered evidence which demonstrates that Plaintiff's termination was the direct result of her deficient job performance and mishandling of job responsibilities. Next, Judge Smyser addressed Plaintiff's intentional infliction of emotional distress claim and concluded that this claim likewise fails because the record lacks any evidence supporting an outrageous, extreme, or dangerous action by the Defendants. Finally, the report recommends denying Plaintiff Douglas Leese's loss of consortium claim.

### D.    Objections

Plaintiffs filed Objections to Judge Smyser's R&R on April 12, 2012 (Doc. 51) and a Memorandum of Law in support thereof on April 30, 2012. (Doc. 54). Defendants filed a Memorandum of Law in support of the R&R on May 9, 2012. (Doc. 56). Plaintiffs contend that Judge Smyser erred in concluding that Plaintiff did not detrimentally rely on the Defendants' representations, in finding that there was no causal nexus between Plaintiff taking FMLA leave and her termination, and in holding that there is no record evidence to support Plaintiff's intentional infliction of emotional distress claim.

**IV.   DISCUSSION**

We will address each of the Plaintiffs' arguments *seriatim* and, for the

reasons that follow, will ultimately adopt in its entirety Magistrate Judge Smyser's

Report and Recommendation.

**A.     FMLA and Equitable Estoppel**

It is undisputed that Plaintiff is not an "eligible employee" within the

FMLA's definition of that term because Defendant Adelphoi does not hire the

minimum number of employees at the location where Plaintiff worked for the

statute to apply. Thus, in their Motion for Summary Judgment, the Defendants

argue, first, that the Plaintiffs may not proceed with an action predicated on FMLA

statutory rights because the FMLA is by its own terms inapplicable. Plaintiffs

respond that the Defendants are equitably estopped from raising eligibility as a

defense because, throughout her tenure, they represented to Plaintiff that she is an

FMLA eligible employee.

The Third Circuit has not yet addressed the question of whether the doctrine

of equitable estoppel applies to FMLA claims. As noted in *Heckler v. Comm.*

*Health Servs. of Crawford Cnty.*, 467 U.S. 51, 59 (1984), equitable estoppel is a

doctrine created by the courts "to avoid injustice in particular cases." Largely in

reliance on *Heckler*'s guidance, several Circuits have held that the doctrine is

applicable to FMLA claims. *See Woodford v. Comm. Action of Green Cnty., Inc.*,
268 F.3d 51, 54-57 (2d Cir. 2001) ("[F]uture employees who rely to their detriment
upon the assurance of their employer that they qualify for leave under the FMLA
may have recourse to the doctrine of equitable estoppel . . . ."); *Kosakow v. New
Rochelle Radiology Assocs.*, 274 F.3d 706, 725 (2d Cir. 2001) (applying the
doctrine to FMLA claims where "the enforcement of the rights of one party would
work an injustice upon the other party due to the latter's justifiable reliance upon
the former's words of conduct"); *see also Dobrowski v. Jay Dee Contractors, Inc.*,
571 F.3d 551, 557 (6th Cir. 2009); *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d
579, 582 (7th Cir. 2000).

The compelling analysis of these Circuit Courts has led courts within our
Circuit to follow suit, predicting that the Third Circuit would hold the doctrine
applicable as well. *See Nicholl-Kenner v. Lawrenceville Urology, P.A.*, 2012 U.S.
Dist. LEXIS 71674, *17-19 (D.N.J. May 23, 2012); *Wilson v. Rawle & Henderson
LLP*, 2011 U.S. Dist. LEXIS 127048, *9-16 (E.D. Pa. Nov. 2, 2011); *Sinacole v.
iGate Capital*, 2006 U.S. Dist. LEXIS 91538, *24 (W.D. Pa. Dec. 19, 2006).
Assuming for the sake of argument that the Third Circuit would apply the doctrine
to FMLA claims, and without making any prediction with respect to the issue, we

10

nonetheless conclude that Plaintiff has failed to prove the elements of an equitable estoppel claim.

In order to prevail on the estoppel argument, Plaintiff would need to demonstrate that she relied *to her detriment* on the Defendants' representations that she was an "eligible employee" for purposes of FMLA leave. Plaintiff spends much time in her briefs arguing that she did indeed *rely* on these representations, and we find nothing in the record to discredit this contention. Plaintiff filled out the requisite forms, requested leave consistent with the Defendants' purported FMLA procedures and policies, and took leave under the impression that the same was FMLA protected.

Plaintiff's argument misses the mark. She apparently contends that this reliance automatically triggers the application of equitable estoppel and bars the Defendants from asserting eligibility as a defense. However, Plaintiff must not only demonstrate to the Court that she relied on these representations, but that this reliance was to her detriment—that is, that she was somehow harmed as a result of her reliance on the Defendants' representations of FMLA eligibility.[2] This the

---

[2] We note only briefly, and without placing any improper reliance thereon, that the Third Circuit, without comment on the various district courts' predictions regarding the applicability of equitable estoppel theories to FMLA claims, affirmed the holding of the District Judge in *Sinacole*, noting that where the plaintiff failed to introduce any evidence of detriment resulting from her reliance, the district court did not err in refusing to apply equitable estoppel. *See Sinacole v. iGate Capital*, 287 Fed. App'x 993, 996 (3d Cir. 2008).

Plaintiff has failed to do, for reasons fully articulated in Magistrate Judge Smyser's Report.

As evidence of detriment, the Plaintiffs contend that Plaintiff may not have taken medical leave on April 18, 2008, if she had known that she was not an FMLA covered employee.  However, as discussed in detail *infra* in our analysis of the merits of Plaintiff's FMLA claims, we find no evidence demonstrating that she suffered a detriment, a deprivation of a right, or any other harm, as a result of her—and Defendants'—misconception of her status as an employee eligible for FMLA benefits. Plaintiff was neither terminated nor disciplined as a result of her decision to take FMLA leave but, instead, for her poor job performance, and thus suffered no detriment as a result of her reasonable reliance on the Defendants' representations regarding FMLA coverage. Accordingly, we will adopt Magistrate Judge Smyser's recommendation in full and conclude that the Defendants are not equitably estopped from raising ineligibility as a defense to Plaintiff Judy Leese's claims in Counts I and II of her Complaint.

### B.    FMLA Retaliation and Interference Arguments

Assuming *arguendo* that we were to find the doctrine of equitable estoppel applicable to Plaintiff's FMLA claims, we would enter judgment all the same in the Defendants' favor for reasons which are, to some extent, inextricably

intertwined with our above analysis—that is, Plaintiff has entirely failed to offer evidence to this Court that the Defendants interfered with statutorily-protected leave, improperly terminated her, or otherwise retaliated against her for exercising rights protected by the FMLA.

## 1.   Retaliation

In *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135 (3d Cir. 2004), the Third Circuit, in reliance on the statute's express language, announced that in order to establish the elements of a retaliation cause of action, a plaintiff must prove: (1) that he took an FMLA protected leave, (2) that he suffered an adverse employment decision, and (3) that the adverse decision was causally related to the protected leave. *Id.* at 146-47. Plaintiff argues that genuine issues of fact remain with respect to the third element and that summary judgment is thus improper. We address this argument only briefly, deferring largely to Magistrate Judge Smyser's exhaustive review of the record and his cogent—and in our view, correct—analysis at pages twenty-one (21) through twenty-eight (28) of the report. (Doc. 48, pp. 21-28).

The summary judgment record establishes that the Defendants had formed an intent to terminate Plaintiff on or before April 16, 2008, prior to the Plaintiff providing notice of her intended FMLA leave. The Defendants attempted to

13

schedule a meeting with Plaintiff for April 18, 2008 at which it was their intent to discuss her job performance deficiencies, in particular the violations of company policy which, were in their view, significant, and to terminate her employment as a result thereof.

Defendant Matko testified that there were recurring negative performance evaluations, a point conceded by Plaintiff although she contends her performance improved, and that these evaluations, coupled with issues occurring during the preceding summer and coming to light in April 2008, were the concern that culminated in the decision to terminate the Plaintiff. Defendant Soltys testified that after Plaintiff cancelled the April 18 meeting for medical reasons, a second meeting, at which she was ultimately terminated, was scheduled for May 1, 2008. As Judge Smyser aptly observed, "it is not speculative and is not in genuine dispute that, whether or not [Plaintiff] sensed it or knew it, [Defendants] were planning to fire her." (Doc. 48, p. 25).

Plaintiff contends that the Defendants' asserted reasons for terminating her employment are merely pretextual and that they did not form the intent to fire her until she requested an extension of her FMLA leave beyond May 1, 2008.[3] The

---

[3] The Third Circuit's decision in a recent nonprecedential opinion is instructive on this issue. In *Baker v. United Def. Indus.*, 403 Fed. App'x 751 (3d Cir. 2010), the Circuit noted that an employer's decision to proceed "along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causuality." *Id.* at 758. Here, while Plaintiff

testimony and evidence of record, however, defeats this contention. The record establishes that the Plaintiff's job performance had been deficient and a subject of concern for some time, that Plaintiff received negative performance reviews on more than one occasion, and that the Defendants decision to terminate the Plaintiff was made prior to her initial request for leave on April 17, 2008. Indeed, the only reason that the Defendants failed to terminate Plaintiff prior to her request for medical leave was because they believed, in a business practice with which we cannot take issue, that the best course was to terminate an employee during an in-person discussion rather than over the telephone or by other means. Plaintiff's medical leave obviously delayed such a meeting.

Accordingly, for the reasons stated herein, and more fully articulated in Magistrate Judge Smyser's detailed analysis, the Court will adopt the R&R with respect to Plaintiff's FMLA retaliation claim.

### 2.    Interference

Magistrate Judge Smyser does not address Plaintiff's interference arguments because a primary element of the interference claim is an entitlement to FMLA benefits, and, as noted, Judge Smyser concluded that the Plaintiff was not so

---

asserts the timing of the termination as dispositive proof of pretext, *Baker* instructs—correctly, in our opinion—that intervening FMLA leave does not obstruct the otherwise lawful termination process which have been initiated before, but only by coincidence accomplished after, the employee requested medical leave.

entitled. Even assuming, again *arguendo*, that Plaintiff is entitled to benefits pursuant to the FMLA, Plaintiff has nevertheless failed to establish a requisite element of an FMLA interference claim.

A plaintiff's burden in establishing a *prima facie* case of interference pursuant to the FMLA is to demonstrate that she was entitled to benefits under the FMLA and that she was denied said benefits. *Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005). Critically, however, and a point overlooked by Plaintiff, an FMLA interference claim is not analogous to a strict liability claim, and a plaintiff must establish some harm or prejudice as part of the claim; a plaintiff cannot prevail where she does not establish any recoverable damages. *See, e.g.*, *Lapham v. Vanguard Cellular Sys., Inc.*, 102 F. Supp. 2d 266, 270 (M.D. Pa. July 5, 2000) ("Because [the employee's] intermittent leave was paid, she did not suffer lost wages until after her termination . . . [and] where the employment relationship has been terminated for lawful reasons, the employer no longer has a duty to compensate the employee.").

Here, like in *Lapham* and as established in section (1) *supra*, the Plaintiff was lawfully terminated for failure to abide by workplace policies and for poor job performance. Upon her lawful May 1 termination, the Defendants no longer had a legal obligation to compensate the Plaintiff and the Plaintiff did not suffer any

16

wage loss compensable by the FMLA. Accordingly, we must find in favor of the Defendants on Plaintiff's FMLA interference claim as well.

### D.   Intentional Infliction of Emotional Distress

Plaintiff lastly contends that the Defendants intentionally inflicted emotional distress upon her by requiring her to come in to work for a meeting on May 1, 2008, the date that the only doctor's note in Defendants' possession stated that Plaintiff could return to work. On the record before us, we must agree with Magistrate Judge Smyser's report, incorporating parts of his analysis herein by reference, and ultimately conclude that no genuine issues of material fact remain with respect to this claim.

To prevail on an intentional infliction of emotional distress claim, a plaintiff must establish the following: "(1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; and (4) that distress must be severe." *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. Ct. 1997). As this Court has oft reiterated, outrageous conduct is that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." *See Hanczyc v. Valley Distrib. & Storage Co., Inc.*, 2011 U.S.

Dist. LEXIS 49169, *8 (M.D. Pa. May 9, 2011) (quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa. Super. Ct. 1997)).

Specifically, Plaintiff contends that Defendant Perkins' actions in requiring her to attend the May 1, 2008 meeting, at which she was to be terminated, amounted to extreme and outrageous conduct because Defendant Perkins was aware that Plaintiff was on pain medication, was aware that she was in pain, and nonetheless told her "I don't give a damn." (*See* Doc. 48, p. 30). It is this comment particularly that Plaintiff suggests demonstrates conduct which is "outrageous in character, and so extreme in degree" as to cause severe emotional distress to a reasonable person.

We disagree with Plaintiff's assertions, and conclude that the single statement just referenced, even drawing all reasonable inferences in Plaintiff's favor and against the Defendants, does not support a claim for intentional infliction of emotional distress. This statement, while off-putting, does not rise to the level of conduct which would incite outrage among reasonable members of society, a requisite element of an intentional infliction of emotional distress claim. Thus, we adopt in full Magistrate Judge Smyser's R&R with respect to Count III and will grant the Defendants' Motion for Summary Judgment on this claim.

### E.     Loss of Consortium

As a final matter, we briefly address Plaintiffs' loss of consortium claim. In light of our finding that Plaintiff Judy Leese's FMLA and intentional tort claims fail, the claim of her husband, Plaintiff Douglas Leese, must necessarily likewise fail as such claim is entirely derivative of the underlying claim by the plaintiff spouse. Accordingly, we will grant the Defendants' Motion with respect to the loss of consortium claim brought by Plaintiff Douglas Leese.

## V.     CONCLUSION

Accordingly, based on all of the foregoing, we shall adopt in full Magistrate Judge Smyser's Report and Recommendation (Doc. 48) and enter judgment as a matter of law in favor of all Defendants. An appropriate order shall issue.